# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JIL LEBEL,**

        **Plaintiff,**

**v.**                                                                                                                 **Case No: 6:17-cv-617-Orl-37DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

Jil Lebel (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for disability benefits. Doc. 1. Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) determining Claimant's residual functional capacity (RFC) (a) without properly developing the record and (b) without weighing the opinions of Claimant's treating physician, Dr. Fernando Gonzalez-Portillo; 2) failing to propound to the vocational expert (VE) a hypothetical question that adequately reflected Claimant's limitations; and 3) determining Claimant's testimony concerning her pain and limitations were "not entirely consistent" with the record. Doc. 22 at 6; 20; 22. Claimant requests that the case be reversed and remanded for an award of benefits, or, in the alternative, further proceedings. *Id*. at 27. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

**I.      PROCEDURAL HISTORY.**

This case stems from Claimant's application for disability insurance benefits and supplemental security income. Doc. 22 at 1. Claimant alleged a disability onset date of January 25, 2012. R. 18. Claimant's application was denied on initial review, and on reconsideration. The matter then proceeded before the ALJ. On August 11, 2015, the ALJ held a hearing at which Claimant and her representative (an attorney) appeared. R. 18. The ALJ entered her decision on August 26, 2015, and the Appeals Council denied review on February 3, 2017. Doc. 22 at 1.

**II.     THE ALJ'S DECISION.**

In her decision, the ALJ found that Claimant has the following severe impairments: peripheral neuropathy, carpal tunnel syndrome (CTS), obesity, polyarthritis / fibromyalgia / paresthesia. R. 21. The ALJ also found that Claimant has the following non-severe impairments: depression-affective disorders. R. 22.

The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. R. 22-24.

The ALJ found that Claimant has the RFC to perform a full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)[1] with the following specific limitations:

> The claimant can lift ten (10) pounds occasionally and less than ten (10) pounds frequently. She can stand or walk up to two hours per an eight-hour workday. She can sit up to six hours per an eight-hour workday. She would be limited to occasional climbing. She should never climb rope, ladder or scaffolds. She must avoid concentrated exposure to extreme cold, heat, vibration, hazards, such as heights and machinery. The claimant is limited to "frequent" handling with the right hand.

---

[1] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.1567(a)

R. 24.  The ALJ found that Claimant was capable of performing her past relevant work as a customer service representative, telephone solicitor, and manager of finances, because that work did not require the performance of work-related activities precluded by Claimant's RFC.  R. 30.  In addition, the ALJ found that Claimant could also perform other work in the national economy, such as surveillance monitor, callout operator, and document preparer.  R. 31-32.  Thus, the ALJ found that Claimant was not disabled between her alleged onset date (January 25, 2012) through the date of the decision (August 26, 2015).  R. 32.

### III. **STANDARD OF REVIEW**.

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.     **ANALYSIS.**

    **1. The Residual Functional Capacity**

Claimant asserts that the ALJ erred by determining Claimant's RFC "after [1] failing to obtain all the pertinent evidence and [2] failing to adequately consider and weigh all of the limitations outlined by the treating physicians." R. 6. The first argument concerns the ALJ's duty to develop the record, particularly as it relates to alleged deficiencies concerning certain records related to Dr. Portillo, Dr. Karamali Bandealy, Dr. Roberto Pancorbo, and the Osceola Regional Medical Center. *Id.* The second argument, although stated in the plural, relates to the alleged opinions of Dr. Gonzalez-Portillo, one of Claimant's treating physicians. *Id.* The Court will address these arguments seriatim.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing the claimant's RFC in terms of exertional levels of work. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[2] The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe, when determining the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

---

[2] The Eleventh Circuit has stated "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference[.]" *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citation omitted).

### a. Duty to Develop.

Claimant first argues that the ALJ failed to sufficiently develop the record by not obtaining certain records related to Dr. Gonzalez-Portillo, Dr. Bandealy, Dr. Pancorbo, and the Osceola Regional Medical Center. Doc. 22 at 6. According to Claimant, several of the records related to particular visits to these medical providers consist only of listed diagnoses and medications or, in the case of the medical center, discharge papers. *Id*. at 7-8. But Claimant, who was represented by counsel at the hearing before the ALJ and did not object to the record at that stage, neither claims that additional records exists, nor explains what those additional records may establish. *Id*. Thus, the Commissioner argues in response that: the ALJ was under no duty to obtain the alleged records; the very existence of the records is pure speculation; and Claimant has established no prejudice from the purported failure by the ALJ to obtain these alleged records. *Id*. at 15-18.

The ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam).[3] This duty generally requires the ALJ to assist in gathering medical evidence, and to order a consultative examination when such an evaluation is necessary to make an informed decision. 20 C.F.R. §§ 404.1512(b), 416.912(b). There must be a showing that the ALJ's failure to develop the record led to evidentiary gaps in the record, which gaps resulted in unfairness or clear prejudice, before the court will remand a case for further development of the record. *Graham*, 129 F.3d at 1423 (citing *Brown*, 44 F.3d at 934-35).

Here, the ALJ satisfied her duty to develop a full and fair record. The record, as Claimant notes, contains several medical records that appear to relate to visits to medical providers on

---

[3] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Claimant was represented during the administrative proceedings. *See* R. 52-79, 82-107. Therefore, the ALJ, in this case, only had a basic duty to develop the record.

particular dates. The records cited to by Claimant do contain what can primarily be described as lists of diagnoses and medications. There are other records from many of these medical providers that do contain other, additional information. Thus, Claimant implicitly asserts that there are missing medical records from these providers, and the ALJ erred by not obtaining those documents. But Claimant's argument is based upon speculation and conjecture. Indeed, there is no actual assertion by Claimant that other records do exist. And, even if they exist, there is no assertion by Claimant as to what these other records would establish or how Claimant was prejudiced by the ALJ's failure to consider the records. On this basis alone, the undersigned finds that the Claimant's argument should be rejected as unsupported conjecture.

It is axiomatic that the ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c) 416.946(c). The ALJ must consider all the evidence, including evidence from treating, examining, and non-examining medical sources, in determining the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ had ample information to determine Claimant's RFC, including numerous treatment records and a consultative examination report. Thus, the undersigned finds, under the circumstances of this case, that the ALJ was not required to attempt to obtain additional medical records from Claimant's treatment providers. Further, Claimant has failed to demonstrate that the alleged failure to obtain the alleged records at issue resulted in unfairness or clear prejudice. In making this determination, the undersigned is also cognizant of the fact that Claimant was represented by an attorney at the hearing before the ALJ, and that attorney did not object to the record as submitted to the ALJ. Any alleged deficiency in the record could have been addressed by the attorney at the hearing – and the attorney's failure to correct the alleged deficiencies in the record leads the undersigned towards the conclusion either that the alleged records did not exist, or that the alleged records (if they did exist) were not material to

Claimant's case. In light of the foregoing, the undersigned finds that Claimant has failed to demonstrate that the ALJ did not develop a full and fair record.

### 2. Dr. Gonzalez-Portillo.

Claimant argues that the ALJ erred by "failing to adequately consider and weigh all of the limitations outlined by" Dr. Gonzalez-Portillo, one of Claimant's the treating physicians. Doc. 22 at 6. Specifically, Claimant asserts that the ALJ failed "to note the weight she assigned to the opinions of Dr. Portillo." *Id*. at 9. But Claimant never actually identifies the "opinions" of Dr. Gonzalez-Portillo that the ALJ allegedly failed to weigh (and certainly never identifies any opinions as to a functional limitation). *Id*. at 12-14. Instead, Claimant discusses certain of Dr. Gonzalez-Portillo's treatment notes. *Id*. Further, Claimant fails to note the fact that the ALJ actually did weigh an opinion of Dr. Gonzalez-Portillo, and gave that opinion significant weight.

The Commissioner raises several arguments. *Id*. at 15-20. The Commissioner first notes that the ALJ gave substantial weight to Dr. Gonzalez-Portillo's assessments of neuralgia, paresthesia / numbness, arm and leg pain, carpal tunnel syndrome with advice to use splints, and possible neuropathy. The Commissioner argues that the treatment records at issue do not contain any medical opinions other than those already weighed and, thus, there were no additional opinions for the ALJ to weigh. Further, the Commissioner asserts that the ALJ need not weigh each and every treatment record of a medical provider. Therefore, the Commissioner argues that the ALJ did not fail to weigh the opinions of Dr. Gonzalez-Portillo, and the ALJ's RFC determination is supported by substantial evidence.

The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In doing so, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining and non-examining medical sources. *See* 20 C.F.R. §§

404.1545(a)(3), 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012). The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927. The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

On April 10, 2013, Claimant was seen by Dr. Gonzalez-Portillo with complaints of paresthesia and pain her right arm and leg. R. 294. Claimant reported having paresthesia in her right hand and right leg for four months with severe pain, numbness and burning sensations in her whole body, mainly on the right side in her hand, neck and hips down to her feet, with daily episodes that lasted all day. *Id*. She reported that she had difficulty holding objects, opening jars, writing, walking and standing. *Id*. On examination, she had normal muscle bulk, tone and strength throughout. R. 295. She had intact reflexes, sensation, and coordination. *Id*. Serial finger tapping and rapid alternating movements were normal with no tremor. R. 295. She had normal casual, tandem, heel, and toe gait. R. 295. Her posture was normal with no instability. *Id*. She was assessed as having post-herpetic neuralgia, paresthesia / numbness-diffuse, possibly peripheral neuropathy-right shoulder, and carpal tunnel syndrome (CTS)-most likely due to CTS versus C5 cervical radiculopathy and was advised to use wrist splints; and peripheral neuropathy. *Id*.

On June 10, 2013, Claimant returned to Dr. Gonzalez-Portillo for follow-up for complaints of paresthesia in both hands. R. 310. She reported having paresthesia in her right hand and right leg for four months with severe pain, numbness and burning sensations in her whole body, mainly on the right side in her hand, neck and hips down to her feet, with daily episodes that lasted all day. *Id.* She reported that she had difficulty holding objects, opening jars, writing, walking and standing. *Id.* An examination was unchanged from her previous visit, and she had no motor or sensory abnormality. R. 310. Her gait was stable. R. 311. She was assessed as having post-herpetic neuralgia, paresthesia / numbness-diffuse, possibly peripheral neuropathy-right shoulder, and CTS – most likely due to CTS versus C5 cervical radiculopathy and was advised to use wrist splints; and peripheral neuropathy. R. 310.

On September 10, 2013, Claimant returned to Dr. Gonzalez-Portillo for a follow-up for complaints of CTS as well as paresthesia in her right arm and leg for which she said she had been doing worse since her last visit. R. 313. She reported having the same pain and difficulties as previously noted at her prior visits. *Id.* A neurological examination was unchanged from the last visit, with no sensory or motor abnormality and stable gait. R. 313-14. Dr. Gonzalez-Portillo increased Claimant's Lyrica and Elavil at that time. R. 314.

On November 12, 2013, Claimant visited Dr. Gonzalez-Portillo and stated that her paresthesia were "about the same." R. 362. A neurological examination was unchanged from the last visit, with no sensory or motor abnormality and stable gait. R. 363.

It appears that Claimant also saw Dr. Gonzalez-Portillo on July 9, 2014, July 17, 2014, July 31, 2014, August 25, 2014, and October 6, 2014. The only records from those dates were visit summaries listing the claimant's diagnoses and medications. R. 413-418, 425. The diagnoses include post-herpetic neuralgia, paresthesia / numbness, pain in arm / leg, carpal

tunnel syndrome, peripheral neuropathy, muscle spasm, insomnia, and fibromyalgia. R. 425. Dr. Gonzalez-Portillo's records show a similar visit on March 13, 2015, and include a visit summary listing medications and a problem list. R. 455. The problem list at that time included post-herpetic neuralgia, paresthesia/numbness, pain in arm / leg, carpal tunnel syndrome, peripheral neuropathy, muscle spasm, insomnia, fibromyalgia, neck pain / cervicalgia, low back pain, multiple sclerosis-NOS, MRI-abnormal, and headache. *Id.*

On May 15, 2015, Claimant returned to Dr. Gonzalez-Portillo for a follow-up appointment for her paresthesia, low back, and neck pain. R. 518. Claimant described her paresthesia as "less intense than before" but reported still having pain, numbness, and burning sensations mainly in her right side from her hands with radiation to the neck and from the hips down to her feet. *Id.* She again reported that she had difficulty holding objects, opening jars, writing, walking, standing and getting dressed. *Id.* She also reported having spasms under her right arm. *Id.* Claimant indicated that she was doing better with headaches and reported having two episodes a week where she experienced dizziness, blurry vision, photophobia, phonophobia, and nausea. *Id.* Claimant also noted episodes of dizziness when she stood up. *Id.* A neurological exam was unchanged from the previous visit with no motor or sensory abnormality and stable gait. R. 519. Her diagnoses included post-herpetic neuralgia, paresthesia / numbness, pain in arm / leg, carpal tunnel syndrome, peripheral neuropathy, muscle spasm, insomnia, fibromyalgia, neck pain / cervicalgia, low back pain, headache, migraine, tension headache, and nausea. R. 519.

In her decision, the ALJ specifically discussed Dr. Gonzalez-Portillo's treatment notes from the April 2013, November 2013, and February 2014 visits. R. 26-27. Further, the ALJ gave "substantial weight" to Dr. Gonzalez-Portillo's April 2013 assessment, which is the same

assessment that Dr. Gonzalez-Portillo gave in June 2013. Claimant does not complain about the ALJ's decision to give Dr. Gonzalez-Portillo's assessment substantial weight or about the ALJ's consideration of the April 2013, November 2013, and February 2014 treatment notes, even though the ALJ did not specifically assign a weight to those treatment notes. Instead, Claimant discusses the treatment notes not specifically detailed by the ALJ her decision, asserts in a conclusory manner that those notes constitute opinions that should have been weighed, and then concludes that the ALJ erred by not weighing those treatment notes. "A medical provider's treatment notes may constitute medical opinions if the content reflects judgment about the nature and severity of the claimant's impairments." *Lara v. Comm'r of Soc. Sec.*, 605 F. App's 804, 811 (11th Cir. 2017) (per curiam) (citing *Winschel*, 631 F.3d at 1179). The treatment records at issue document Claimant's subjective statements and treatment with medication, as well as certain diagnoses. The treatment records, however, do not reflect any statements or judgments about the nature and severity of Claimant's impairments, nor do they contain any opinions about Claimant's functional limitations. *See id*. To the extent that the treatment notes do contain opinions in the form of diagnoses, the ALJ appropriately weighed and considered those opinions, giving them substantial weight. Further, the undersigned is troubled by the fact that Claimant never mentioned in her brief to the Court the fact that the ALJ gave substantial weight to Dr. Gonzalez-Portillo's assessment, which is an opinion duplicated in several of the treatment notes that Claimant asserts were not weighed. Even if Claimant does not admit that this undermines her argument – which the undersigned finds it does – Claimant certainly owes a duty of candor to the Court to address that issue. Further, it is clear from the decision that the ALJ considered Dr. Gonzalez-Portillo's medical records as a whole. Having done so, the ALJ need not discuss in her decision each and every piece of medical evidence contained within a particular

physician's treatment notes. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole.'"). Thus, the undersigned finds that the ALJ was not required to give specific weights to the treatment notes identified in Claimant's brief.

Additionally, assuming the treatment records from Dr. Gonzalez-Portillo contain medical opinions that should have been weighed, the ALJ's failure to weigh those medical opinions is harmless error. The ALJ considered the treatment records from Dr. Gonzalez-Portillo, as well as the other medical evidence concerning Claimant's impairments, and found that Claimant is limited to sedentary work with specific additional limitations. Claimant has pointed to nothing in the treatment records from Dr. Gonzalez-Portillo that demonstrate that Claimant's impairments caused functional limitations greater than those contained in the ALJ's RFC determination. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *see also Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam). Instead, the ALJ's RFC determination appears to be consistent with the treatment records from Dr. Gonzalez-Portillo. Thus, to the extent the ALJ erred by not weighing the treatment records from Dr. Gonzalez-Portillo, the undersigned finds that the error is harmless.

Therefore, in light of the foregoing, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### 2. Hypothetical to VE.

In reliance upon her first assignment of error as to her RFC, Claimant also argues that the ALJ failed to present a hypothetical to the VE that contained all of her limitations. Doc. 22 at 20-21. The ALJ may consider the testimony of a VE in determining whether the claimant can perform past relevant work, *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005), and other jobs in the national economy, *Phillips*, 357 F.3d at 1240. The ALJ is required to pose hypothetical questions that are accurate and that include all of the claimant's functional limitations. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Where the ALJ relies on the VE's testimony, but fails to include all the claimant's functional limitations in the hypothetical question, the final decision is not supported by substantial evidence. *See Pendley*, 767 F.2d at 1562 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ posed a hypothetical to the VE that was consistent with her RFC determination. The VE, based on the ALJ's hypothetical, found that Claimant would be able to perform her past relevant work and other work in the national economy. The ALJ found the VE's testimony credible, and relied on the same in determining that Claimant could perform some of her past relevant work and other work in the national economy. R. 30-32.

Claimant argues that since the ALJ failed to "weigh the opinions of the treating physician" (which the undersigned can only assume relates to Dr. Gonzalez-Portillo's treatment notes) and "failed to obtain all of the pertinent evidence in the case" (which the undersigned can only assume

relates to the medical records identified by Claimant in her first assignment of error), the ALJ's hypothetical question was not supported by substantial evidence, and, thus, the ALJ erred by relying on the VE's testimony in determining that Claimant was not disabled. Doc. 22 at 21. This argument is unavailing for two principle reasons. First, Claimant fails to articulate what limitations should have, but were not, included in the ALJ's hypothetical. In fact, other than stating in a conclusory manner that the ALJ's hypothetical question "did not fully and accurately reflect [Claimant's] condition," Claimant provides absolutely no information or argument concerning exactly why or how the ALJ's hypothetical question to the VE was improper. *See id*. Second, the success of Claimant's second assignment of error is contingent upon the success of her first assignment of error. The undersigned, as discussed above, found that the ALJ committed no error with respect to her duty to develop the record and consideration of Dr. Gonzalez-Portillo's treatment notes, and that the ALJ's RFC determination concerning Claimant's condition was supported by substantial evidence. Thus, Claimant's second assignment of error is unavailing. Therefore, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.

### 3. Credibility.

Claimant argues that the ALJ's credibility determination is merely a boilerplate statement that does not provide sufficient reasoning to support the ALJ's determination that Claimant's testimony was "not entirely consistent" with the record. Doc. 22 at 22-24. Thus, Claimant essentially argues that the ALJ did not perform a proper credibility determination. *Id*. The Commissioner argues that the ALJ provided specific reasons in support of her credibility determination, and that her credibility determination is supported by substantial evidence. *Id*. at 24-27.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer*, 395 F.3d 1210. A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. at §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

The ALJ summarized Claimant's testimony as follows:

> At the hearing, the claimant provided the following testimony: she testified that she has lost 40 pounds since the end of January. The weight loss has not helped with her fibromyalgia pain much. She was let go from her job because she had shingles. She stated that she had shingles on her shoulder blade on the right side. She still gets pain, mostly in her shoulder blade area and she was pointing to the right. She stated that for her fibromyalgia she is taking Lyrica. Her pain symptoms are mostly on her upper torso and some pain on her upper thigh. She stated that her right hand bothers her and it gets shaky. Her hand strength is low. In 2009, she testified that she had cancer and had an hysterectomy. She stated that she is being treated for diabetes but with no effect. She stated that she can get a migraine for up to four days and gets nausea and she treats them by placing a cold towel on her head; this

> happens about three times/month. She can lift a soda because she but is not good with lifting. She stated that she was treated for anxiety and depression because it is hard to be in pain and not see an end to it. She stated that she broke her nose in July; she had passed out because of a syncope episode and had some resulting memory problems making her forget to eat. She can concentrate in the mornings but not by the evening because of medications. She gets along with other people.
>
> She testified that her activities of daily living consist of watching some television, limited cleaning, some water coloring. She can do things at her level such as light cooking. She now gets 4 to 6 hours of sleep. She tries to walk on a treadmill five minutes at a time. She stated she has anxiety disorder due to finances. She thinks that she cannot work because she is unreliable because she left a few jobs due to health issues. She stated having multiple doctor appointments. She has to work around her sleep schedule, headache and pain. She is five feet three inches tall and weighs 163 pounds.

R. 25-26. The ALJ found "that [Claimant]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Claimant]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 26. The ALJ then discussed the medical evidence of record in chronological order. R. 26-29. In discussing that evidence, the ALJ appropriately weighed the opinions of the medical professionals and correlated some of the medical evidence of record with the question before the ALJ; the ALJ explained that the July 30, 2015 treatment notes of a nurse practitioner (the most recent treatment notes discussed by the ALJ) did "not reflect the level of severity that would prohibit work activity." Then, ALJ explained that:

> After reviewing the record in its entirety, the undersigned notes that the record reflects continued treatment for the claimant's alleged conditions. The medical evidence, the objective medical findings, and the medical opinion evidence, does not support the degree of limitation alleged and portrayed by the claimant.
>
> *** [The ALJ provided an intervening discussion of the state evaluators' opinions.]
>
> In summary, the above residual functional capacity assessment is supported by the medical evidence of record, the opinions of examining consultants, and the observation and testimony received by the undersigned at the hearing held on August 11, 2015. It is also consistent with the claimant's acknowledged activity levels and demonstrated abilities.

- 16 -

> Although the claimant does have certain impediments, the limitations alleged are more restrictive than those supported by the objective medical evidence. Thus, in consideration of the entire record, the undersigned finds that the limitations incorporated into the residual functional capacity are consistent with the objective medical evidence presented.
>
> In summary, the claimant's symptoms are not severe enough to prevent her from performing sedentary work activity. After carefully considering the entire record the undersigned is persuaded that the claimant's impairments as of January 25, 2012 are not as limiting as alleged and would not prevent the claimant from performing work at the residual functional capacity determined in this decision on a regular and continuing basis, including past relevant work as a customer service representative, telephone solicitor, and manager of finances.

R. 29-30.  Thus, the ALJ found that Claimant's allegations concerning limiting effects of her impairments were "not entirely credible" because those alleged limitations were not supported by the objective medical evidence.  *Id*.  Further, the ALJ found that the limitations set forth in the RFC were consistent with the medical evidence of record and Claimant's acknowledged activity levels and abilities.  *Id*.  In particular, Claimant testified that she did water coloring, some light cleaning and some light cooking.  R. 62-65.

    The foregoing excerpts reveal that the ALJ's credibility determination was not limited to the boilerplate language highlighted by Claimant.  Thus, Claimant's argument challenging the sufficiency of the ALJ's credibility determination is not well-taken.  And again the undersigned is concerned that Claimant failed completely to identify to the Court the portions of the ALJ's decision that address credibility, choosing instead to focus on one paragraph within that decision and ignore the existence of significant portions of the ALJ's decision.

    The ALJ provided specific reasons in support her credibility determination.  R. 29-30.  Claimant does not challenge the reasons articulated in support of the ALJ's credibility determination, but, instead, simply argues that the ALJ did "not offer any specific reasons for undermining [Claimant's] testimony, and offer[ed] no specific reasons supporting his [sic.]

credibility determination." Doc. 22 at 24. The issue before the Court is not whether there is evidence to support the Claimant's testimony, but whether there is substantial evidence to support the ALJ's credibility determination. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence."). The reasons articulated by the ALJ in support of her credibility determination support that determination, and are supported by substantial evidence, including the medical evidence of record concerning the severity of Claimant's impairments and Claimant's testimony concerning her daily activities. This evidence is, as the ALJ found, inconsistent with Claimant's testimony concerning her limitations. Thus, the undersigned finds that the ALJ articulated good cause in finding Claimant's testimony "not entirely consistent" with the record, and that her reasons are supported by substantial evidence. *See Foote*, 67 F.3d at 156162 (reviewing court will not disturb credibility finding with sufficient evidentiary support).

Therefore, it is **RECOMMENDED** that the Court reject Claimant's third assignment of error challenging the ALJ's credibility determination.

V.      **CONCLUSION**.

For the reasons stated above, it is **RECOMMENDED** that:

1. The final decision of the Commissioner be **AFFIRMED**; and

2. The Clerk be directed to enter judgment for Commissioner and close the case.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**Recommended** in Orlando, Florida on May 31, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy